IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff ) | |
| v. ) | Civil Action No. 6:06cr032-02 |
| ) | |
| GWENDOLYN JEAN CONWAY, et al., ) | |
| ) | |
| Defendants ) | |

### REPORT AND RECOMMENDATION

#### *I. Background*

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

#### *II. Facts*

Defendant Gwendolyn Jean Conway ("Conway") was charged in Counts One, Nine and Ten of a ten-count Indictment dated September 21, 2006. Count One charged that on or between November, 2005 and January, 2006, Conway conspired to distribute five hundred grams or more of a mixture or substance containing cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846. Count Nine charged that on or about December 16, 2005, Conway distributed, or aided an abetted in the distribution, of a measurable quantity of a mixture or substance containing cocaine, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. Count Ten charged that on or about January 12, 2006, Conway distributed a measurable quantity of a mixture or substance containing cocaine, a Schedule II controlled substance in violation of 21 U.S.C. § 841.

On December 5, 2006, a plea hearing was conducted before the undersigned. At that hearing, Conway, accompanied by her counsel, James J. Angel, entered a plea of guilty to Counts One and Ten of the Indictment. Conway had previously plead not guilty, and she appeared on December 5, 2006 to change her plea from not guilty to guilty as to Counts One and Ten. Conway acknowledged that she had signed a written Plea Agreement reflecting her guilty plea, identified the Plea Agreement at the hearing and stated that she agreed to all of its terms.

At the December 5, 2006 hearing, defendant was placed under oath and testified that her name is Gwendolyn Jean Conway. Conway stated that she was fully aware of the nature of the charges against her, the elements of the offenses, and the consequences of pleading guilty to Count One and Ten. Conway was plainly able to understand and communicate with the court and her counsel, and she stated that she could read and write in English. At all times, Conway appropriately responded to inquiries from the court and exhibited a full understanding of the proceedings and the instructions given her by counsel in court. Conway stated that she has not been diagnosed or treated for any mental or emotional problem which would affect her ability to communicate or understand the proceedings. Conway further testified that she was not under the influence of any alcohol, drug or medication that affected her ability to understand the nature of the proceedings being held, the nature of the charges against her, or the consequences of pleading guilty to those charges. Conway further stated that she did not suffer from any condition that impeded or prevented her being able to understand the words that were being spoken or the proceedings in general. She was advised that if at any time she failed to understand, she could stop the proceedings and seek clarification. Conway's counsel, Mr. Angel, expressed his opinion that Conway was capable of entering a knowing, voluntary and intelligent plea.

2

Conway testified that she had received a copy of the Indictment pending against her and that she had discussed the Indictment and the case with her counsel. After being informed of the provisions of Fed. R. Cr. P. 11(c), Conway stated that she was pleading guilty because she was, in fact, guilty of the offense charged. Conway testified that she was pleading guilty of her own free will and had not been forced, threatened or coerced in any respect. Conway stated that no assurances or promises had been made by anyone to her in an effort to induce her plea in this case, except to the extent set forth in the written Plea Agreement filed with the court.

Conway testified that she had read the Plea Agreement in its entirety, and she had discussed its terms with her counsel before signing the agreement. Conway stated that she understood the terms of the Plea Agreement, and that the document presented to the court set forth her agreement with the government in its entirety. Conway stated that she understood that under the Plea Agreement: (1) the government was moving to dismiss Count Nine of the Indictment against her; (2) that if she complies with the requirements for acceptance of responsibility, the government would recommend a three level reduction for acceptance of responsibility; (3) she would be held responsible for a drug weight of 500 grams of cocaine, resulting in a guideline level of 26; (4) the government would not contend that her role in the offense was either aggravating or mitigating under Guidelines § 3B1.1. and § 3B1.2.; (5) the government would recommend a sentence within the range set forth in the sentencing guidelines; (6) the government would object to a sentence below the sentencing guidelines range; and (7) no promises were made regarding a substantial assistance motion.

Conway acknowledged that the agreement included provisions waiving any right to collaterally attack her sentence and waiving her right to any direct appeal concerning the

application of the sentencing guidelines to her case. Conway further acknowledged that the presiding court is not required to accept the agreement and may reject or defer acceptance of the plea agreement, including any recommendation for sentencing, until after a presentence report is prepared and reviewed.

Conway stated that she understood that the offenses with which she is charged are felonies, and that, if her plea is accepted, she will be adjudged guilty of the offense by the presiding court and this adjudication may deprive her of valuable civil rights, such as the right to vote, hold public office, serve on a jury and possess a firearm.

Conway was informed of the maximum possible penalty provided by law for the offense with which she is charged and she said she understood the penalties and consequences of the plea. Specifically, Conway was informed that as to Count One she was subject to a mandatory minimum term of imprisonment of five (5) years and a maximum term of forty (40) years, a fine of up to two million dollars, a $100 special assessment, and a term of supervised release following any term of imprisonment. As to Count 10, Conway was informed that she was subject to a maximum term of imprisonment of twenty (20) years, a fine of up to one million dollars, a $100 special assessment, and a term of supervised release following any term of imprisonment.

Conway also was informed that, under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued sentencing guidelines for judges to follow in determining the sentence in a criminal case. Because of certain recent Supreme Court decisions, these sentencing guidelines are now advisory. Conway acknowledged that she and her counsel had discussed how the sentencing guidelines might apply in her case, and she stated her

understanding that the court would not be able to determine the recommended guideline sentence of her case until after a presentence report has been completed and both parties have an opportunity to challenge the reported facts and the application of the guidelines. Conway stated that she understood that the eventual sentence imposed may be different from any estimate her attorney has given her, and that the court has the authority, in some circumstances, to depart from the advisory guidelines and impose a sentence that is more severe or less severe than the sentence called for by the advisory guidelines. Conway acknowledged that she understood that the court is not bound by any recommendations set forth in the plea agreement, and may sentence her up to the statutory maximum. Conway stated that she understood that in that event she would not be able to withdraw her guilty plea. Conway acknowledged that she understood that parole had been abolished, and, in the event she receives a sentence of incarceration, she will not be released on parole. Conway also stated that she understood that any term of supervised release could be revoked if she violated the terms and conditions of such release, and she said that she understood that if supervised release is revoked, an additional term of imprisonment could be imposed regardless of how long she may have served before the violation. Conway was advised that if resentenced following a supervised release violation, she may serve a combined total period of incarceration greater than the maximum term she had been told she could receive. Conway acknowledged that she understood that by entering a plea of guilty pursuant to the Plea Agreement, she waived her right to appeal any sentencing guideline issues and any right to appeal her guilty plea or sentence so long as her sentence falls within the statutory limit. Conway also waived any right to collaterally attack all or part of the sentence imposed by way of a habeas corpus petition.

Conway also testified that she understood that she had the right to a trial by a jury, in addition to the following rights, which would be waived or given up if her guilty plea is accepted:

1. The right to plead not guilty to any offense charged against her;

2. The right at trial to be presumed innocent and to require the government to prove her guilt beyond a reasonable doubt;

3. The right of assistance of counsel;

4. The right to see, hear and cross-examine witnesses;

5. The right to call witnesses to testify in her own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses; and

6. The right to decline to testify unless she voluntarily elected to do so in her own defense.

Conway stated that she was fully satisfied with the advice and representation given to her in this case by her counsel and that she understood the possible consequences of her plea. Having all of this explained to her, Conway stated that she understood the possible consequences of a Guilty Plea as to Counts One and Ten and asked the court to accept her plea of guilty to these counts. Conway's counsel stated that he believed that his client's plea of guilty was well advised and consistent with the facts of the case.

The government proffered, without objection, the following evidence regarding the offenses with which Conway is charged:

During late 2005, Conway participated in a conspiracy to distribute cocaine in the Lynchburg and Campbell County area of the Western District of Virginia. On or about November 29, 2005, Conway was asked by co-defendant David Norvell ("Norvell") to help him

6

locate some powder cocaine. At Norvell's request, Conway contacted a friend to supply the cocaine, and she arranged the sale between her supplier and the confidential informant. The purchase price was set at $13,500 for one-half kilogram of powder cocaine. Norvell, Conway, a confidential informant, and a government agent met at Conway's house at 2205 Old Forest Road, Lynchburg, Virginia, to complete the purchase. The supplier did not show up at the appointed hour for the deal, and the confidential informant and government agent left Conway's house. Eventually, the supplier arrived, and co-defendant Norvell called the confidential informant. When the confidential informant returned, the supplier demanded $15,000 for the one-half kilogram of powder cocaine. The sale was completed at that price, as arranged by Norvell and Conway. The substance was determined to be 496.6 grams of powder cocaine. Later, on or about January 12, 2006, the confidential informant contacted Conway about another purchase of cocaine. In the process of facilitating that sale, Conway gave the confidential informant a small amount of powder cocaine from another supplier. All of these events took place in either Campbell County or Lynchburg, Virginia.

Neither Conway nor her counsel offered any disagreement with the facts set forth in the government's proffer and agreed that the cocaine sales took place as described in the proffer. Conway testified that in late 2005, David Norvell asked her where to get some powder cocaine. Conway said she "threw a line out and got a bite." Conway said that the original price was $13,500 for the one-half kilogram, but that once the supplier arrived, he demanded $15,000, and the sale was completed at her house at that price. Later, in January, 2006, the confidential informant called her directly about another sale, and she arranged another sale from another

7

supplier. In connection with this sale, Conway gave the confidential informant a small amount of powder cocaine.

## III. PROPOSED FINDINGS OF FACT

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations.

1. Conway is fully competent and capable of entering an informed plea;

2. Conway is aware of the nature of the charges and the consequences of her plea;

3. Conway knowingly and voluntarily entered pleas of guilty to Counts One and Ten of the Indictment; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offense to which Conway is pleading guilty.

## VI. RECOMMENDED DISPOSITION

Based upon the above findings of fact, the undersigned **RECOMMENDS** that the presiding District Court accept Gwendolyn Jean Conway's pleas of guilty to Counts One and Ten of the Indictment and adjudge her guilty of the offenses charge therein, order a presentence investigation, and set a date for Conway's sentencing.

## NOTICE TO PARTIES

The Clerk is directed to immediately transmit the record in this case to the Hon. Norman K. Moon, United States District Judge. Both sides are **NOTIFIED** that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become

conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Norman K. Moon, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record.

Enter this 13 day of December, 2006.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge